IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JOSE ANTONIO VELEZ, :
:
Plaintiff, :
:
v. : CIVIL ACTION NO.: CV614-074
:
BRUCE CHATMAN; DOUG WILLIAMS; :
JOHN PAUL; MAJOR JOHN DOE; MAJOR :
JANE DOE; CAPTAIN JOHN DOE; CAPTAIN :
JANE DOE; LIEUTENANT JOHN DOE; :
LIEUTENAN JANE DOE; SERGEANT :
JOHN DOE; SERGEANT JANE DOE; :
and DORM CORRECTIONS OFFICERS :
ON DUTY MAY 16, 2012, :
:
Defendants. :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who was formerly incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement. Defendants Bruce Chatman, Doug Williams, and John Paul ("Movants") filed a Motion to Dismiss, to which Plaintiff failed to file a Response. Based on the reasons which follow, Movants' Unopposed Motion should be **DENIED** based on a statute of limitations defense but **GRANTED** as to Movants' arguments that Plaintiff failed to exhaust his administrative remedies.[1]

---

[1] Plaintiff was directed by Order dated September 16, 2014, to advise the Court of the identities of the John/Jane Doe Defendants and the names of the dorm corrections officers on duty on May 16, 2012. Plaintiff was informed that his failure to inform the Court of the identities of these individuals could result in the dismissal of these Defendants from this cause of action. (Doc. 3, p. 4.) Plaintiff has not provided the Court with the identities of these individuals. Accordingly, the undersigned recommends that Plaintiff's claims against the John/Jane Doe Defendants and the dorm corrections officers on duty on May 16, 2012, should be **DISMISSED**.

## BACKGROUND[2]

Plaintiff contends that, upon his arrival at Georgia State Prison, he asked to be placed in protective custody because he was attacked by other inmates while he was housed at the Georgia Diagnostic and Classification Prison. Plaintiff also contends he wrote letters to each of the Movants informing them that he had been assaulted at the Georgia Diagnostic and Classification Prison. Plaintiff argues that after his arrival at Georgia State Prison, no one responded to his request for protective custody. Plaintiff asserts that, less than a month after he made his request for protective custody, another inmate assaulted him on May 16, 2012, while he was in the television room.

Specifically, Plaintiff claims another prisoner stood outside of the door to the television room and another stood at the door and acted as lookouts while a third inmate assaulted him. Plaintiff also claims the inmate who assaulted him punched him in the face, slammed his head and body against a cement wall, and kicked him. Plaintiff alleges he fell onto a metal bench, and the other inmate slammed Plaintiff's body and head into this bench. According to Plaintiff, the policies and procedures in place, as well as the acts of omission, indicated Defendants' deliberate indifference to his safety and security. (Doc. 1.)

Movants assert several grounds for dismissal in their instant motion. First, they contend Plaintiff's Complaint is barred by the applicable statute of limitations period. Movants also assert Plaintiff's Complaint should be dismissed because he failed to exhaust his administrative remedies prior to filing this cause of action. Additionally, Movants contend that Plaintiff cannot maintain compensatory damages claims against them in their official capacities and that

---

[2] The below recited allegations are taken from Plaintiff's Complaint, (Doc. 1), and are viewed, as they must be at this stage, in the light most favorable to Plaintiff.

Plaintiff's Complaint fails to state a claim against them. Finally, Movants assert they are entitled to qualified immunity from suit in their individual capacities.

DISCUSSION

I.   **Statute of limitations**

   A.   **Standard of review**

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678. "To dismiss a prisoner's complaint as time-barred . . . it must appear beyond a doubt from the complaint itself that the prisoner can prove no set of facts which would avoid a statute of limitations bar." McKenzie v. United States Dep't of Justice, Drug Enforcement Agency, 143 F. App'x 165, 168 (11th Cir. 2005) (citing Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003) (internal quotations omitted)).

   B.   **Discussion**

Movants state the events giving rise to Plaintiff's Complaint occurred on May 16, 2012, which is the date Plaintiff contends another inmate assaulted him. Movants note that Velez filed his Complaint on July 21, 2014, which is more than two (2) years after Plaintiff knew of the

allegations contained in his Complaint. Accordingly, Movants assert, Plaintiff's claims are barred by the applicable statute of limitations. (Doc. 25-1, p. 4.)

Constitutional claims brought pursuant to section 1983 "are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011). Georgia has a two-year statute of limitations for personal injury actions. O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations, "[f]ederal law determines when the statute of limitations begins to run." Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003). As a general rule, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id.

Plaintiff signed his Complaint on April 29, 2014. "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." United States v. Glover, 686 F.3d 1203, 1205 (11th Cir. 2012) (quoting Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009)). If Plaintiff had placed his Complaint in the prison mail system on that date, his Complaint would be filed timely, even though the Complaint was not filed upon this Court's docket until July 21, 2014. (Doc. 1.) "Unless there is evidence to the contrary, like prison logs or other records," a court can "assume that a prisoner's motion was delivered to prison authorities on the day he signed it." Glover, 686 F.3d at 1205 (citation omitted).

In this case, there is nothing before the Court which indicates that Plaintiff did not place his Complaint in the prison mail system on April 29, 2014. The undersigned notes that Plaintiff sent his Complaint via certified mail. (Doc. 1-1, p. 1.) According to the United States Postal

Service's tracking system, however, the package containing Plaintiff's Complaint was "accepted" on July 17, 2014, and was delivered to the Clerk of Court on July 21, 2014.[3] Construing the evidence before it in the light most favorable to Plaintiff, the Court will assume Plaintiff placed his Complaint in the prison mail system on April 29, 2014, and then, for whatever reason, the package containing his Complaint was not accepted by the United States Postal Service until July 17, 2014.

It is not clear from the face of Plaintiff's Complaint that his Complaint should be barred under the applicable statute of limitations period. McKenzie, 143 F. App'x at 168. Thus, under the standards applicable at this stage, the Court finds that Plaintiff's Complaint, which Plaintiff apparently signed on April 29, 2014, and which details events allegedly occurring on May 16, 2012, was filed in a timely manner. Consequently, the statute of limitations portion of Movants' Motion should be **denied**.

## II. Exhaustion of administrative remedies

### A. Standard of review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

---

[3] https://tools.usps.com/go/TrackConfirmAction.action?tRef=fullpage&tLc=1&text28777=&tLabels=70123460000257137538, last accessed on Feb. 13, 2015.

### B. Discussion

Movants maintain Plaintiff failed to exhaust his administrative remedies regarding the claims in this cause of action prior to filing his Complaint, as required under the Prison Litigation Reform Act ("PLRA"). Movants note Plaintiff was housed at Georgia State Prison from April 19, 2012, until November 12, 2014. Movants assert Plaintiff filed three (3) informal and one (1) formal grievance, but no emergency grievances, in 2012. Movants state that Plaintiff's informal grievances concerned: 1) being moved to several housing areas and medical issues; 2) the "attack beating" he suffered on May 16, 2012, (doc. 25-1, p. 8); and 3) the unavailability of sick call and library call slips. (Id.) Movants also state that Plaintiff's formal grievance concerned Plaintiff's contention that he was not being provided with proper medications. (Id.) Movants aver that Plaintiff did not file a grievance in which he alleged that they or any other officer at Georgia State Prison failed to protect him from an assault.

Plaintiff states in his Complaint that the grievance process was not made available to him despite his repeated attempts to begin this process. Plaintiff asserts he was not allowed access to counselors or grievance forms and he wrote Movants letters outlining his concerns. Plaintiff also asserts he informed Movants in these letters that he never received a grievance form to begin the grievance process and requested that Movants consider the letters he purportedly wrote to them as his grievances. According to Plaintiff, his letters were ignored. (Doc. 1, p. 9.)

In response, Movants observe these purported letters do not replace the requirement that Plaintiff was to use the administrative grievance procedure. Movants also observe Plaintiff's grievance history belies his assertions that he was unable to obtain grievance forms.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See

Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

Standard Operating Procedure ("SOP") IIB05-0001 set forth the three (3) steps an inmate had to complete under the Georgia Department of Corrections' grievance procedure in effect at the time of the events underlying this cause of action occurred.[4] First, an inmate had to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware or should have been aware "of the facts giving rise to the grievance." (Doc. 25-3, p. 6.) An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. (Id. at p. 7.) If the inmate was dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance. (Id.) Once an inmate received the Warden's response to his formal grievance and was dissatisfied with that response, he had five (5) business days to file an appeal with the Commissioner. (Id. at p. 9.) The Commissioner's Office had 90 calendar days after receipt of the appeal to respond. (Id. at p. 10.) Under the SOP, an inmate could file a grievance regarding "[a]ny condition, policy, procedure, action or lack thereof that affects inmates and is in the control of the Department of Corrections[.]" (Id. at p. 4.) A grievance could be rejected for several reasons, including any grievance which did not comply with SOP IIB05-0001. (Id. at p. 5.) Inmates were permitted to file one (1) informal grievance each calendar week and were limited to having two (2) non-emergency grievances pending at the institutional level. An inmate also was permitted to file what he deemed to be an emergency grievance, and, if the grievance qualified as an emergency, this grievance did not count toward that inmate's grievance limits. (Id. at pp. 5–6.)

---

[4] This SOP was amended with an effective date of December 10, 2012, and inmates are no longer required to file an informal grievance. (SOP IIB05-0001, p. 4) (Dec. 2012). The previous version of this SOP is relevant for this Court's purposes.

With these standards and procedures in mind, the Court now addresses each of Plaintiff's grievances and assesses whether Plaintiff exhausted his administrative remedies through those filings.

### 1. Informal grievance 119239

In Plaintiff's informal grievance 119239, which was dated May 7, 2012, Plaintiff stated that he had been moved to "numerous hou[si]ng areas" since his transfer to Georgia State Prison. (Doc. 25-5, p. 2.) Plaintiff also stated that his medications were interrupted with each of these moves, even though he fell under the chronic care category. This informal grievance was rejected on May 11, 2012, because Plaintiff "failed to stay in [the] space provided." (Id.) Plaintiff did not refile this informal grievance to correct his deficiency. (Doc. 25-4, p. 2.)

Plaintiff's Complaint concerns events which allegedly occurred on May 16, 2012, and Movants' alleged deliberate indifference to Plaintiff's safety. Informal Grievance Number 119239 did not pertain to the allegations contained in Plaintiff's Complaint, and the filing of this informal grievance—even if done in a proper manner—cannot be considered to have fulfilled Plaintiff's obligation to exhaust his administrative remedies prior to filing this cause of action.

### 2. Informal grievance 127448

Plaintiff asserted in Informal Grievance Number 127448 that he gave a grievance form to a correctional officer on May 18, 2012, which detailed the "attack beating" he suffered on May 16, 2012. (Doc. 25-6, p. 2.) Plaintiff alleged that there was "lack of security, no help, inadequate medical treatment coupled by the lack of available counselors, which is a big problem." (Id.) Plaintiff requested that the prison administration process his grievance because he complied with the timely filing requirements. This informal grievance was dated May 12,

2012, and was received by prison officials on August 1, 2012. (Id.) On August 2, 2012, this informal grievance was rejected because Plaintiff grieved about more than one issue, to wit: lack of security, inadequate medical treatment, and a lack of available counselors. (Id.)

Arguably, Informal Grievance Number 127448 details certain events that Plaintiff alleges form the basis of his cause of action. While the date of this informal grievance is listed as May 12, 2012, it was not received for resolution until August 1, 2012.[5] In addition, the informal grievance was rejected at the informal level, or step 1 of the grievance process in place, and Plaintiff did not resubmit this grievance. Even if the prison official's reason for the rejection had been incorrect or was arbitrary, Plaintiff could have resubmitted this grievance to detail only one (1) issue.

Further, it is not clear this informal grievance would have placed Movants on notice that Plaintiff would later file suit against them based on a deliberate indifference to safety claim. The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). "However, 'while § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). In Brown, the Eleventh Circuit held "that 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his

---

[5] It is possible that the May 12, 2012, date listed on Informal Grievance Number 127448 is a typographical error and that Plaintiff actually provided another date on the original informal grievance form. Even if this were the case, however, such an error would be of no moment, as this informal grievance was not rejected based on a timeliness issue.

claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide." 212 F.3d at 1210. Nevertheless, the purpose of section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001)). Rather, § 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

Plaintiff contended in this informal grievance that there was a "lack of security" in the dorms and that he was beaten on May 16, 2012. However, Plaintiff made no attempt to name or otherwise identify the prison officials who would have been in charge of security or that the alleged lack of security was a contributing factor in the alleged assault. Again, even if this grievance had been accepted as being in the proper form, there is nothing before the Court indicating that Movants would have been placed on notice of the claims that Plaintiff asserts against them in this action.

### 3. *Informal grievance 121694*

Informal Grievance Number 121694 was dated May 18, 2012, and was received on June 6, 2012. Plaintiff asserted that he had been unable to obtain sick call and law library slips. This informal grievance was rejected as being filed out of time. (Doc. 25-7, p. 2.) The contentions in this informal grievance are not related to the events giving rise to Plaintiff's Complaint and cannot be considered in determining whether Plaintiff exhausted his

11

administrative remedies prior to the filing of this cause of action, even if this informal grievance had been filed timely.

### 4. *Formal grievance 129805*

Plaintiff also filed Informal Grievance Number 129805, which was dated August 27, 2012, on September 10, 2012. In this grievance, Plaintiff complained about being a chronic care patient and being deprived of his heart, high blood pressure, pain, cholesterol, and mental health medications for several days. (Doc. 25-8, p. 2.) Plaintiff was informed in the prison official's response that his medications were released to him upon his return to Georgia State Prison after being in court. (Id.) Plaintiff filed a formal grievance appeal with the Warden, who informed Plaintiff that, as soon as medical staff were made aware that Plaintiff had returned from court, Plaintiff was provided with his medications. (Id. at p. 9.) Plaintiff completed the administrative process by filing an appeal with the Commissioner's Office. Plaintiff's appeal ultimately was denied on December 12, 2012. (Id. at p. 13.) As with informal grievance 121694, this grievance does not relate to the allegations in this lawsuit and, therefore, cannot provide a basis for Plaintiff having exhausted his administrative remedies before filing suit.

In sum, a review of the evidence before the Court reveals that Plaintiff arguably began the administrative process regarding the alleged events giving rise to this cause of action by filing Informal Grievance Number 127448. However, this informal grievance did not identify the prison officials who would have been in charge of security. Moreover, this grievance was rejected based on the determination that it contained more than one (1) issue. Under the version of SOP IIB05-0001 in place in May 2012, rejecting a grievance for containing more than one (1) issue was permitted. (See Doc. 25-3, p. 5.) There is no evidence Plaintiff resubmitted this

informal grievance in compliance with SOP IIB05-0001 or otherwise attempted to conform to this SOP's requirements.

Plaintiff asserts in his Complaint that he was not provided with any grievance forms and could not file a grievance concerning his contention that Movants were deliberately indifferent to his safety. However, the evidence before the Court belies Plaintiff's contention. Specifically, and as discussed above, Plaintiff filed four (4) informal grievances—one dated May 7, 2012; two (2) dated May 18, 2012; and one dated August 27, 2012. The undersigned recognizes Plaintiff's assertion that he wrote several letters addressed to the Movants, as well as Plaintiff's contention that these letters serve to show his compliance with the administrative remedies process. (Doc. 1, pp. 12–19.) However, Plaintiff's contention is rejected, as any letter, particularly one which has not been signed, cannot serve to fulfill an inmate's obligation to exhaust his administrative remedies prior to filing a § 1983 action against prison officials. (Doc. 25-3, pp. 4–9, *supra*.) There is nothing before the Court indicating that Movants received any of these letters or would have been placed on notice of Plaintiff's claims against them. Further, Plaintiff presents no evidence that the administrative remedies process was unavailable to him or that he was otherwise prevented from filing a grievance detailing the events of May 16, 2012, and informing Movants that their alleged deliberate indifference to his safety contributed to the alleged assault. Instead, the evidence reveals that Plaintiff failed to exhaust his available administrative remedies concerning the alleged events of May 16, 2012 prior to the filing of this cause of action. Consequently, this portion of Movants' Motion should be **granted**, and it is unnecessary to address the remaining grounds of Movants' Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Movants' Unopposed Motion to Dismiss be **DENIED** as to the statute of limitations defense but otherwise **GRANTED** based on Plaintiff's failure to exhaust his available administrative remedies. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies.

**SO REPORTED** and **RECOMMENDED**, this 13th day of February, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA